UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
JAKE J. RUFFINO,                                                 :
                                                                 :
               Plaintiff,                                         :
                                                                 :   **RULING ON CROSS-**
      -against-                                                 :   **MOTIONS FOR**
                                                                 :   **SUMMARY JUDGMENT**
SHELITTA COLEMAN, *et al.*,                                      :
                                                                 :   23-CV-322 (VDO)
               Defendants.                                        :
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

    Plaintiff Jake J. Ruffino, a sentenced inmate incarcerated at MacDougall-Walker Correctional Institution ("MacDougall") in Suffield, Connecticut, brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Plaintiff contends that Defendant Little sexually assaulted him and both Defendants retaliated against him. The parties have filed cross-motions for summary judgment. For the following reasons, Defendants' partial motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. The case will proceed to trial on Plaintiff's claim against Defendant Little for sexual assault.

**I.    FACTS[1]**

    The parties present contradictory versions of the incidents underlying Plaintiff's claims. The undisputed facts are presented here, and any disputed facts are included in the discussion of the claims below.

    Plaintiff was an unsentenced inmate confined at New Haven Correctional Center ("NHCC") during the encounter with Defendant Little on February 11, 2022 and a sentenced

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits. The Court cites one source for each undisputed statement rather than including multiple citations for the same fact.

inmate during his encounter with Defendant Coleman on April 29, 2022. Defs.' Local Rule 56(a)1 Stmt., Doc. No. 69-2, ¶¶ 1–2. At this time, Defendant Coleman was a correctional counselor for A-unit at NHCC, and Defendant Little was a correctional officer at NHCC. *Id.* ¶¶ 3–4. Defendants are sisters. Pl.'s Local Rule 56(a)1 Stmt., Doc. No. 44 ¶ 18.

In February 2022, Plaintiff was working as a block tier man. *Id.* ¶ 2. The eligibility criteria for this job included no discipline score of 4 and no assault on staff in the past five years. Doc. No. 69-2 ¶ 12. Plaintiff did not meet those criteria. *Id.* ¶ 13.

On February 11, 2022, there was an encounter between Plaintiff and Defendant Little while Plaintiff was distributing lunch trays in the unit dayroom. Doc. No. 44 ¶¶ 4, 6. Plaintiff lost his prison job that same day. *Id.* ¶ 11. In response to Plaintiff's grievance, he was told that, during a routine performance review, it was discovered that Plaintiff had been hired in error; he was not qualified for the position as he had a discipline score of 4 and had two assaults on staff during the past five years. Doc. No. 69-2 ¶ 12.

Defendant Little did not issue Plaintiff a disciplinary report as a result of the encounter on February 11, 2022. *Id.* ¶ 8. Absent the issuance of a disciplinary report, Defendant Little did not have the authority to discharge Plaintiff from his job. *Id.* ¶¶ 6–7.

On April 29, 2022, Defendant Coleman entered Plaintiff's housing unit with a book he had ordered. *Id.* ¶ 14. Plaintiff confronted her while out of his cell.[2] *Id.* Defendant Coleman did not give the book to Plaintiff at that time because he had to sign for the book and it was Defendant Coleman's practice not to give a pen, which could be used as a weapon, to an inmate who was not secured in his cell. *Id.* ¶¶ 15–16. Shortly thereafter, Plaintiff refused orders to

---

[2] Although Plaintiff contends that he was secured in his cell when Defendant Coleman entered the housing unit, the video surveillance footage submitted by Defendants shows that he was out of his cell. *See* Doc. No. 71.

2

secure in his cell and he was taken to restrictive housing. *Id*. ¶ 17. Plaintiff was not permitted to have personal property while in restrictive housing. *Id*. ¶ 18. Defendant Coleman did not pack or inventory Plaintiff's personal property when he was transferred to restrictive housing. *Id*. ¶ 19. Plaintiff was transferred to a different housing unit after his release from restrictive housing on May 2, 2022 and received his book on May 18, 2022. *Id*. ¶¶ 21–22; Pl.'s Local Rule 56(a)2 Statement, Doc. No. 76 ¶ 23.

## II.   LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v.*

*Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### III.   DISCUSSION

Plaintiff asserts three claims: Defendant Little sexually assaulted him on February 11, 2022; Defendant Little retaliated against him by firing him from his prison job that same day; and Defendant Coleman retaliated against him for filing grievances against Defendant Little by refusing to give him the book and directing that his television be stolen while he was in restrictive housing. Plaintiff contends that he is entitled to summary judgment on all three claims based, primarily, on his own affidavit. Defendants move for summary judgment only on the retaliation claims on three grounds, Plaintiff failed to properly exhaust his administrative remedies on his retaliation claims, Plaintiff's retaliation claims fail as a matter of law, and they are protected by qualified immunity.

#### A.   Exhaustion of Administrative Remedies

Defendants first argue that Plaintiff failed to properly exhaust his administrative remedies on his retaliation claims.

4

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even

5

with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) (inmate failed to exhaust administrative remedies because he commenced action in district court before appeal was decided or response period elapsed).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from

6

taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

The general inmate grievance procedure is set forth in Administrative Directive 9.6. *See* Defs.' Mem., Ex. K, Doc. No. 69-18. An inmate must first attempt to resolve the matter informally. He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. Dir. 9.6(6)(a)(i)(2). If attempts to resolve the matter verbally are not effective, the inmate must make a written attempt using form CN9601 and send the form to the appropriate staff member or supervisor. Dir. 9.6(6)(a)(i)(2-3). If an inmate does not receive a response to the written request within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance on form CN9602. Dir. 9.6(6)(a)(ii).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *Id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Dir. 9.6(6)(b)(i). The Unit Administrator may extend the response time upon notice to the inmate on the prescribed form. Dir. 9.6(6)(b)(i)(4).

The inmate must appeal the disposition of the Level 1 grievance by the Unit Administrator, or the Unit Administrator's failure to dispose of the grievance in a timely manner,

to Level 2. The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate and is decided by the District Administrator. Dir. 9.6(6)(b)(ii).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. Dir. 9.6(6)(iii).

Directive 9.6 specifically provides that "[c]omplaints alleging retaliation or misconduct other than sexual abuse or sexual harassment must follow the Administrative Remedies Procedure outlined in this Directive." Dir. 9.6(8)(a).

### 1. Defendant Little

Plaintiff's grievance regarding the loss of his job is dated March 7, 2022 and was received the following day. Pl.'s Mem. Ex. B, Doc. No. 75-2 at 4. It was denied by the warden on May 10, 2022. *Id*. The warden explained that it was discovered during a routine performance review that Plaintiff was not qualified for the position. *Id*. Plaintiff was informed that he could appeal the denial within five calendar days. *Id*. When Plaintiff did not receive a response, he filed a level 2 appeal on April 9, 2022, and a level 3 appeal on May 23, 2022. *Id.* Ex. C & D, Doc. No. 75-2 at 6, 8. Defendants, however, have submitted documentation showing that an extension of time to respond to the grievance was issued on April 4, 2022. Defs.' Mem. Ex. D, Doc. No. 70-5 at 28.

In response to the level 3 appeal, District Administrator Rodriguez wrote Plaintiff a letter explaining that the level 1 grievance was denied on May 10, 2022 but, presumably because

8

Plaintiff was no longer confined at NHCC, he did not receive the grievance response until August 26, 2022. Pl.'s Mem. Ex. E, Doc. No. 75-2 at 10. Because there was a response to the level 1 grievance, District Administrator Rodriguez explained that the level 3 appeal did not meet the criteria for review and would not be considered, but afforded Plaintiff five calendar days from September 9, 2022 to file a level 2 appeal of the denial of the grievance. *Id*.

Plaintiff filed the level 2 appeal on October 4, 2022, claiming that he had difficulty obtaining an appeal form. *Id*. Ex. F, Doc. No. 75-2 at 12. The appeal was denied on November 23, 2022, noting that the response given by the warden was appropriate and that any appeal of a job removal decision should have been appealed under Directive 9.6, section 7. *Id*.

In the original grievance, Plaintiff complained that Defendant Little had acted in retaliation and stated that he wanted his job back. *Id*. Ex. B, Doc. No. 75-2 at 4. In this action Plaintiff is asserting only a claim for damages based on retaliation. As Plaintiff does not seek restoration of his job in this action and the directive specifically provides that claims of retaliation must be exhausted under the procedures in Directive 9.6(6), the Court considers the retaliation claim against Defendant Little to be exhausted. Defendants' motion for summary judgment is denied on the retaliation claim against Defendant Little on the ground that he failed to exhaust his administrative remedies.

      **2.**     **Defendant Coleman**

Plaintiff filed a level 1 grievance regarding the loss of his television on June 1, 2022. *Id*. Ex. J., Doc. No. 75-2 at 20. In the grievance, which was received on June 2, 2022, he states that, upon his release from restrictive housing on May 2, 2022, he discovered that his television was missing and contends that it was taken in retaliation for grievances he had filed against Defendants Little and Coleman. *Id*. The grievance was denied on July 15, 2022. *Id*. Although

9

Plaintiff could have appealed the denial, he did not do so. Instead, on July 11, 2022, Plaintiff filed a level 2 appeal on the ground that he had not received a timely response to his level 2 grievance. *Id*. Ex. K, Doc. No. 75-2 at 22. The grievance appeal was rejected on August 12, 2022 because Plaintiff failed to follow the proper procedures for claims relating to the loss or damage to inmate property. *Id*.

Plaintiff's level 1 grievance was received on June 2, 2022 and denied thirty business days later, on July 15, 2022.[3] Plaintiff filed his level 2 appeal on July 11, 2022, before the response period expired. Although the grievance was not rejected for this reason, the Supreme Court has held proper exhaustion requires that grievances be filed in accordance with the deadlines established in the administrative remedy policy. *Jones*, 549 U.S. at 217–18. As the directive provides that an inmate may file an appeal based on the failure to respond only if the unit administrator has not responded to the level 1 grievance in a timely manner, Plaintiff failed to comply with the grievance procedure and, therefore, has not properly exhausted his administrative remedies on the retaliation claim regarding his television.

Plaintiff filed a grievance regarding his book on May 11, 2022. *Id*. Ex. H, Doc. No. 75-2 at 16. He stated that Defendant Coleman refused to permit him to sign for his book and continued to hold it out of retaliation. *Id*. The grievance was received on May 12, 2022 and denied on July 18, 2022 with a notation that Plaintiff had received his book on May 18, 2022. *Id*. Plaintiff submits a copy of a level 3 grievance appeal dated August 12, 2022 stating that he had not received replies to his level 1 grievance or his June 24, 2022 level 2 grievance appeal.

---

[3] Plaintiff argues that, although the grievance clearly lists the date of disposition as July 15, 2022, the warden signed the grievance on August 1, 2022. Neither party provides evidence regarding the import of this discrepancy. Even assuming that the response was untimely, Plaintiff improperly filed his level 2 appeal before the response period expired.

*Id*. Ex. I, Doc. No. 75-2 at 18. He does not submit any response to the level 3 grievance. As noted above, the Department of Correction considers a grievance appeal based on the lack of response to be improperly filed where there is a response to the underlying grievance. Thus, Plaintiff's level 3 grievance was not proper. As he fails to present evidence showing that he appealed the July 18, 2022 denial of his level 1 grievance, he has not properly exhausted his administrative remedies on this claim.

However, as Plaintiff was confined in several correctional facilities during this time and neither party has submitted evidence showing when Plaintiff received the responses to his grievances regarding Defendant Coleman's conduct, the Court will proceed to address the merits of the claims against her.

**B.     Retaliation**

Defendants further argue that, even if Plaintiff were deemed to have exhausted his administrative remedies, the retaliation claims fail as a matter of law. To prevail on his retaliation claims, Plaintiff must present evidence showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

Filing a lawsuit is considered a protected activity. *See Gill v. Pidlypchak*, 389 F.3d 379, 280 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim); *Stewart v. Ayala*, No. 3:20-CV-1938(CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022) (protected speech or activity includes "filing a lawsuit, an administrative complaint, or a prison grievance"). Here, however, Plaintiff only threatened to file a lawsuit against Defendant Little. The Second Circuit has not yet addressed whether the

11

threat to file a lawsuit is protected speech and other courts are divided. *Conquistador v. Martin*, No. 3:10-cv-1965(KAD), 2022 WL 17821096, at *3 (D. Conn. Dec. 20, 2022); *see Livingston v. Hoffnagle*, No. 9:19-CV-0353(GLS/CFH), 2019 WL 7500501, at *13 (N.D.N.Y. Nov. 8, 2019) (threat to file lawsuit constitutes protected activity) (citing cases). As some courts have found that the threat to file a lawsuit is sufficient to meet the first element, Defendants must negate one of the other two elements to prevail on this claim.

Whether conduct is considered adverse depends on the context in which it occurs. "Conduct that is properly initiated, reasonably executed, independently justified and equally administered—regardless of any animosity towards the plaintiff—does not rise to a constitutional claim for retaliation." *Diezel v. Town of Lewisboro*, 232 F.3d 92, 109 (2d Cir. 2000). In addition, prisoners may be required to tolerate more than public employees or average citizens before an action is considered adverse. *Id.* The Second Circuit has defined adverse action as retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (internal quotation marks and citation omitted). The conduct underlying a retaliation claim need not, however, rise to the level of a constitutional violation to be considered adverse action. *See McCarroll v. Matteau*, No. 9:09-CV-0355(NAM/TWD), 2012 WL 4380156, at *12 (N.D.N.Y. June 15, 2012).

Finally, Plaintiff must present evidence showing a causal connection between his protected speech and the adverse action. Temporal proximity may serve as circumstantial evidence of retaliation. *See Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017). However, before a prisoner will be permitted to proceed to trial on a retaliation claim, he must present some further evidence of a retaliatory animus in addition to temporal proximity. *See Faulk v.*

*Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (citing *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)); *see also Bennett*, 343 F.3d at 137 ("because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations") (quotation marks and citation omitted); *Ayers v. Stewart*, 101 F.3d 687, 1996 WL 346049, at *1 (2d Cir. 1996) ("[Plaintiff's] reliance on circumstantial evidence of retaliation—namely the proximity of the disciplinary action to his complaint where no misbehavior reports were previously filed against him—does not suffice to defeat summary judgment."). Once Plaintiff establishes that retaliation was a motivating factor for the adverse action, the burden shifts to Defendants to show that the adverse action would have occurred anyway. *See Monette v. Cnty. of Nassau*, No. 11-CV-0539(JFB)(AKT), 2015 WL 1469982, at *14 (E.D.N.Y. Mar. 31, 2015).

### 1. Defendant Little

Plaintiff contends that, although Defendant Little does not have the authority to remove him from his prison job, she influenced others to do so. As support for his position, he relies on temporal proximity—he lost his job on February 11, 2022, the day of the encounter with Defendant Little—and Defendant Little's purported statement that he did not like his job, a statement Defendant Little denies.

Before proceeding to trial, however, Plaintiff must present some non-conclusory evidence to raise an inference of "retaliatory animus." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 331 (D. Conn. 2015). Even if the Court were to consider Defendant Little's alleged statement to be evidence of retaliatory animus and conclude that there was an issue of fact on this claim, Defendants have shown that Plaintiff would have been removed from his job regardless of any action by Defendant Little. Plaintiff does not dispute that he did not meet the

13

criteria for the job, he merely argues that he had been in the position for four months. That prison officials had not yet conducted the routine performance review that led to the discovery that Plaintiff was not eligible for the job, does not alter the fact that he was not entitled to the position. *See Crenshaw v. Herbert,* 445 F. Supp. 2d 301, 303–04 (W.D.N.Y. 2006) (allegations that plaintiff had altercation with officer, was later removed from prison job, and his grievance denied insufficient to show actions were retaliatory); *see also Winn v. Neven*, No. 2:16-cv-00273-GMN-PAL, 2018 WL 3997271, at *5 (D. Nev. Aug. 21, 2018) (granting motion for summary judgment on claim for retaliatory firing from prison job because plaintiff was ineligible for job under prison rules and was so informed in response to grievance). Defendants' motion for summary judgment is granted on the retaliation claim against Defendant Little on the ground that Plaintiff fails to state a cognizable claim because the adverse action would have occurred anyway.

### 2. Defendant Coleman

Plaintiff contends that Defendant Coleman instructed other staff members to steal the television while he was in restrictive housing in retaliation for his filing a grievance against her sister, Defendant Little. Defendants argue that Plaintiff lacks support for this claim. In opposition, Plaintiff questions why Defendants argue that the Court should not credit his statements but ask the Court to credit their statements.

To prevail on his own motion for summary judgment, Plaintiff must identify admissible evidence showing the absence of a genuine issue of material fact. Plaintiff has no personal knowledge of who packed his property when he was sent to restrictive housing, who took his television, or whether Defendant Coleman encouraged someone to take the television. He relies on the purported statement of an unidentified officer. This statement is inadmissible hearsay.

14

Defendants, on the other hand have submitted the affidavit of Defendant Coleman in which she states that she was not involved in packing Plaintiff's property and did not direct anyone to steal his television. This affidavit, although self-serving, is made on personal knowledge and is admissible in support of the motion for summary judgment. To successfully oppose Defendants' motion for summary judgment, Plaintiff must present admissible evidence showing the existence of a genuine dispute of material facts. The statements in his affidavit regarding the statements of the unidentified officer are inadmissible hearsay. Thus, Plaintiff has not presented any evidence showing the existence of a genuine issue of material fact and summary judgment is warranted for defendants. *See, e.g.*, *Estate of Hamilton v. City of New York*, 627 F.3d 50, 54 (2d Cir. 2010) (affirming district court's refusal to consider hearsay offered in opposition to motion for summary judgment).

On the claim regarding failure to deliver the book and the ensuing delay in delivery, Plaintiff describes the adverse action as a delay of less than three weeks in delivery of the book. To constitute adverse action, the conduct must "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes*, 976 F.3d at 274.

Defendant Coleman initially refused to give Plaintiff the book because she does not give pens to unsecured inmates. Plaintiff admitted that this is her standard practice with all inmates. Thus, the initial refusal was an action equally applied to all inmates and does not constitute adverse action. In addition, Plaintiff has made no showing that a brief delay in receiving a book would deter an inmate from exercising his constitutional rights. Thus, the action is *de minimis* and insufficient to support a retaliation claim. *See Shannon v. Vennettozzi*, No. 13-CV-4530(KBF), 2015 WL 114179, at *6 (S.D.N.Y. Jan. 8, 2015) (noting that "courts in this district have found that destruction of personal property is often an adverse action, but minor cases of

withholding property are typically *de minimis*"), *aff'd in part, vacated in part*, 670 F. App'x 29 (2d Cir. 2016): *accord Sosa v. New York City Dep't of Educ.*, No. 18-CV-411(PKC)(MMH), 2024 WL 1719604, at *5 (E.D.N.Y. Apr. 22, 2024) (brief delay in assigning a co-teacher, a short-term issue that was ultimately resolved, not likely to dissuade reasonable worker in plaintiff's position from exercising constitutional rights and did not constitute adverse action).

Defendants' motion for summary judgment is granted on the retaliation claims against Defendant Coleman.

### C. Sexual Assault

Plaintiff's remaining claim is for sexual assault. As Plaintiff was unsentenced at the time of the encounter with Defendant Little, his claim is cognizable under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of pretrial detainees are cognizable under the Fourteenth, rather than the Eighth, Amendment).

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court set forth the standard to be applied to Fourteenth Amendment claims for use of excessive force against pretrial detainees. "[C]ourts must use an objective standard" rather than "a subjective standard that takes into account [the prison official's] state of mind." *Id.* at 396. Thus, to prevail on his claim, Plaintiff must present evidence showing that "the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 397. This determination depends on the "facts and circumstances of each particular case." *Id*. (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989). The court must consider both what the officer involved knew at the time of the incident and the state's need to appropriately manage the correctional facility to preserve order and discipline. *See id.* This standard left unchanged the objective component of the Eighth Amendment deliberate indifference standard.

In *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015), the Second Circuit clarified the Eighth Amendment standard to be applied to claims for sexual abuse of an inmate by a correctional officer. The court explained that even one isolated incident of sexual abuse could satisfy the objective component of the Eighth Amendment standard if the "corrections officer's intentional contact with an inmate's genitalia or other intimate area ... serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate[.]" *Id*. at 257.

Plaintiff and Defendant Little describe the incident differently, each relying only on his or her affidavit. Plaintiff describes the incident as follows. On February 11, 2022, he was performing his prison job of distributing food trays to inmates in the unit dayroom at NHCC. Pl.'s Rule 56(a)1 Statement, Doc. No. 44 ¶ 2. He was wearing a hat because there were no hairnets available. *Id*. ¶ 3. Defendant Little told Plaintiff to remove his hat. *Id*. ¶ 4. When Plaintiff explained that he was wearing the hat because there were no hairnets to cover his head while distributing the food trays, Defendant Little became hostile, snatched the hat, and threw it in a trash can. *Id*. ¶¶ 5-7. She then made vulgar remarks and grabbed Plaintiff's genitals. *Id*. ¶ 8.

Defendants present a different version. On February 11, 2022, Defendant Little observed Plaintiff wearing a baseball cap and shorts, both of which are prohibited except during outdoor recreation. Defs.' Rule 56(a)2 Statement of Additional Material Facts, Doc. No. 70-1 at 9 ¶ 2. When Defendant Little ordered Plaintiff to return to his cell and change his clothes, Plaintiff began to argue with her. *Id*. ¶ 3. The Department of Correction did not receive any notice of a PREA claim by Plaintiff until July 25, 2022, when a letter arrived at the Commissioner's Office. *Id*. ¶ 5. A PREA investigation was commenced but it was closed when Plaintiff refused to

17

provide a proper statement. *Id.* ¶ 6. The Connecticut State Police also conducted an investigation but did not press charges against Defendant Little as there was no video surveillance footage and neither the Department of Correction nor Plaintiff identified any witnesses to the alleged incident. *Id.* ¶¶ 7–10.

As resolving factual disputes is the province of the factfinder, the Court cannot determine which version of the facts is correct. Plaintiff's motion for summary judgment is denied on this claim.

### IV.     CONCLUSION

Defendants' Motion for Partial Summary Judgment on the retaliation claims [**Doc. No. 69**] is **GRANTED**. Plaintiff's Motion for Summary Judgment [**Doc. No. 45**] is **DENIED**. The case will proceed to trial on Plaintiff's claim for sexual assault against Defendant Little.

**SO ORDERED.**

Hartford, Connecticut
July 22, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge